FRED KALB, Plaintiff, *v.* MAX LEFF, Defendant.

City Court of New York, New York County, November 11, 1930.

*William H. Chorosh*, for the plaintiff.

*Robert Seelav*, for the defendant.

NOONAN, J. At the close of the trial both parties moved for the direction of a verdict, and stipulated that the direction might be made in the absence of the jury. Decision on the motions was reserved.

Previous to February 26, 1926, the plaintiff had acted as the sales representative in the United States of a Belgian partnership known as Laurent Geets, hereinafter called Geets, under an agreement for commissions to be paid on the sale of merchandise manufactured by the foreign partnership. On February 26, 1926, the plaintiff, the defendant and Geets entered into a joint agreement under seal, in which it was provided, among other things, that the plaintiff owed Geets an agreed sum of money as the result of the plaintiff's sales agency, and that of this stipulated amount the plaintiff was to pay $2,496.16 in the form of a promissory note dated on the date of the agreement, payable to Geets six months thereafter, and to be indorsed by the defendant. It was also agreed that the plaintiff's contract of sales agency with Geets was canceled and that the defendant was to take plaintiff's place as sales agent for the Western Hemisphere on a commission basis ranging from five to fifteen per cent on all orders shipped from Belgium and paid for. The agreement of sales agency between the defendant and Geets was to continue for one year from March 1, 1926, and from year to year thereafter, unless within ninety days

prior to the expiration of any year written notice of cancellation was given by one party to the other.

The agreement further stated that the plaintiff, although not required to do so, had the right to give such time and attention to the business of the defendant as the representative of Geets as in plaintiff's judgment was necessary, and the plaintiff was to receive from the defendant one-fourth of all the net profits earned by the defendant as the representative of Geets during the period of one year from March 1, 1926, or, in the event the agreement was sooner terminated, a like percentage of all moneys earned by the defendant up to the time of termination.

It was also stipulated that the plaintiff was to receive twenty-five per cent of all profits earned by the defendant in a manner other than as a representative of Geets, provided the plaintiff agreed with the defendant to share in a like percentage in the investment required to be made, and in the losses resulting from the venture.

Three months after the making of the agreement of February 26, 1926, or in June, 1926, the defendant brought an action against Geets to recover damages for breach of contract and for non-payment of commissions. This action was settled in November, 1926, by the payment of $7,500 to the defendant by Geets.

The plaintiff in his first cause of action seeks to recover one-fourth of the amount of the settlement, claiming that he is entitled to it, under the contract provision, as his share of the moneys earned by the defendant. The defendant contends that the relationship between the parties is that of partners and that an accounting in equity is necessary. This contention is not supported by the evidence, and in my judgment the action was properly brought at law. Under the contract there was no partnership in the sales agency of Geets. The defendant was denominated as the single representative, and the contract provided at length his duties and compensation. The plaintiff had stepped out of the agency and the defendant had taken his place. In return for the plaintiff's cancellation of his contract with Geets, as well as for the time and attention he might give to the business of the defendant as the new sales agent, the defendant agreed to pay the plaintiff one-fourth of the net profits and the moneys which he might earn as agent. If the contract continued for a year, one-fourth of the net profits was to be paid. An earlier termination called for a payment of one-fourth of the moneys earned. Commissions were to be paid to the defendant alone, and out of the net earnings and the moneys earned he agreed to pay to the defendant one-fourth thereof as compensation. Although an accounting may be necessary to determine this compensation, an action in equity was not

necessary to recover the plaintiff's proportionate share. (*Hathaway* v. *Clendening Co.*, 135 App. Div. 407; *Freeman* v. *Miller*, 157 id. 715; *Schultz* v. *Brackett Bridge Co.*, 35 Misc. 595, 597.)

In *Schultz* v. *Brackett Bridge Co.* (*supra*) the court said: " The mere fact that a person is to receive for services a share in the net profits of a business, and that an accounting is necessary to ascertain the amount of the compensation, does not decisively settle that the arrangement is a copartnership, and does not require an equity action. An accounting is proper in an action at law, and the introduction of the requisite evidence does not change the nature of the action."

While the complaint alleges in the opening paragraph that the plaintiff and defendant were joint adventurers, the evidence does not support this allegation and it may be disregarded. The parties might have made themselves copartners with respect to an enterprise unconnected with the sales agency of the defendant as a representative of Geets, but there is no proof that such a relationship ever came into being. The theory of the plaintiff's first cause of action is that the settlement of the action brought by the defendant against Geets represented moneys earned by the defendant under the contract. The action brought by the defendant against Geets was based on a claim for commissions actually earned and for damages for breach of contract. The defendant in that action claimed that he was entitled to be paid commissions actually earned and for commissions that he might have earned if the contract had not been breached by Geets. The bringing of the action denoted a termination of the contract of February 26, 1926, made between the plaintiff, defendant and Geets. The contract thereby was brought to an end before the year was out. The defendant had agreed in the event of such contingency to pay to the plaintiff one-quarter of the moneys earned by him. There was no doubt a good reason in the minds of the parties for this difference in the compensation to be paid to the plaintiff dependent on the life of the contract.

The settlement of the action must be regarded as moneys paid to the defendant by Geets for commissions which he earned and might have earned. If the settlement included any other compensation, the defendant was obliged to make it known.

If these premises are correct, I think it must follow that the plaintiff is entitled to receive one-fourth of the settlement as moneys earned by the defendant under his contract with Geets.

The second cause of action is based upon the 12th paragraph of the agreement, which reads: " The said Leff hereby assumes the obligation of the lease of the premises at No. 1431 Broadway,

Manhattan, now held by the said Kalb, for the period commencing March 1st, 1926, and ending September 30th, 1926."

The plaintiff had formerly occupied these premises as the sales agent of Geets.

The plaintiff seeks to recover $600 as the rent for the months of June to September, 1926, inclusive. It is undisputed that the rent of the premises was the sum of $1,800 a year, or $150 a month.

The lease assumed by the defendant was not offered in evidence. There is no proof as to whether the rent was payable in advance or as to what were the other terms of the lease. It is shown that the defendant Leff entered into possession on or about March 1, 1926, and paid the rent from March to May, inclusive. The premises were then vacated by him, and he failed to pay the rent of the months sued for.

About the middle of August, 1926, the landlord of the premises relet the premises to another tenant and gave such tenant free rent from that time to October 1, 1926. The defendant's counsel in his brief concedes that the defendant is liable for the rent of the months of June, July and half of August, and is willing to have judgment entered against the defendant for the sum of $375.

The plaintiff contends that the defendant is also responsible for the entire August and the September rent. The assumption by the defendant Leff of the terms of the lease between the plaintiff and his landlord was equivalent to an assignment of the lease by the plaintiff to the defendant. As the lease was not offered in evidence, there is no proof as to the landlord's right to resume possession and to rent to another tenant for the benefit of the original tenant.

It seems to me, therefore, that the defendant cannot be held liable for more than the amount conceded. The plaintiff claims that he paid the landlord the rent of the months sued for. Whether he was obligated to do so after the landlord resumed possession and relet is not established by the evidence. The plaintiff testified that he gave his landlord permission to relet, for he testified:

" I paid the landlord and gave permission to the landlord to sublet the premises under the best conditions he could."

This permission was given without the defendant's consent.

In the absence of evidence showing his right to do so and to thus bind the defendant, the act of the plaintiff constituted a surrender of the premises followed by the landlord's acceptance. The defendant was thereby released from further payment of the rent. (*Kottler* v. *New York Bargain House, Inc.,* 242 N. Y. 28, 36; *Gray* v. *Kaufman Dairy & Ice Cream Co.,* 162 id. 388.) The plaintiff may only recover on his second cause of action the conceded sum cf $375, and a verdict is directed for that amount in his favor.

The defendant's counterclaim is based on an alleged transfer to him of the note in the sum of $2,496.16, which was made by the plaintiff on February 26, 1926, payable to the order of Laurent Geets and indorsed by the defendant. In his answer, the defendant alleges that the note was transferred to him by the payee subsequent to its protest for non-payment. The defendant seeks to counterclaim the amount of the note with interest and protest fees.

The first objection to the counterclaim is that the defendant is not the legal or equitable owner of the claim represented by the note. To prove the assignment, the defendant introduced in evidence two papers, the first of which is a copy of a receipt which the defendant testified he had signed and delivered to Geets. This paper is dated March 4, 1927, and reads as follows: " Received in trust, with power of attorney, to collect promissory note, signed by Mr. Fred Kalb, New York, amounting to $2,496.16, plus late interests at 6% from February 26th, 1926, due since August 26th, 1926, and protested for non-payment on the 3rd September, 1926."

The other paper is dated June 10, 1927, and the defendant testified he received it in the mail from Belgium ten days later. This paper recites that for " value received, Laurent Geets, a copartnership, * * * sells, assigns and sets over " to the defendant the claim arising from the note in question. It then appoints the defendant as the lawful attorney of Geets to collect the claim by every legal means. It also contains the statement that for the recovery of the sum mentioned the defendant had " agreed to render the said Laurent Geets, copartnership, any possible assistance." As a final recital the paper stated that any action on the claim might be brought in the name of Laurent Geets, or in the name of the defendant at his election " at our cost and expense." The paper dated March 4, 1927, refers to a power of attorney. There is no evidence that any written power of attorney or assignment of the note was given on the date of this paper.

There are some provisions of the later paper of June 10, 1927, which would indicate that an assignment of the note was intended. The statements contained in it that the note was sold, assigned and set over to the defendant support an assignment. On the other hand, the fact that the collection of the note was to be at the cost and expense of Geets would signify a mere power of attorney. The test of an assignment so as to make the assignee the real party in interest is the transfer of complete control and right to the cause of action, entitling the assignee to the fruits thereof. (*Spencer* v. *Standard Chemicals & Metals Corporation*, 237 N. Y. 479, 480.)

To permit the defendant to sue in his own name on the counter-

claim, there must be proof that he is the legal or equitable owner of the claim. As stated in *Spencer* v. *Standard Chemicals & Metals Corporation* (*supra*): " If the assignee have such title it is enough. The consideration paid, the purpose of the assignment, the use to be made of any proceeds collected, is immaterial. * * * But legal title or equitable interest he must have."

It seems to me from the evidence that there was a transfer of the legal title to the claim for the purpose of collection. The words, " sells, assigns and sets over " in the paper of June 10, 1927, intended a transfer of the legal title.

The plaintiff also resists the counterclaim on the ground that it did not exist at the commencement of the action. Although there is no testimony of the fact, the briefs of counsel concede that the action was commenced by the service of a summons on May 3, 1927. The evidence is uncertain as to when the note was assigned to the defendant. The defendant's counsel, Mr. Seelav, testified that the note was assigned for suit six months after the commencement of the present action. The defendant first testified that the letter in which he received the paper dated June 10, 1927, also inclosed the note. Later in his testimony he admitted that he did not know whether he received the note at the time he signed the paper dated March 4, 1927, whether it was at the time he received the one dated June 10, 1927, or at the time of the settlement of the action brought by him against Geets.

The counterclaim here is one which comes within subdivision 2 of section 266 of the Civil Practice Act, which permits a defendant to counterclaim on any cause of action on contract existing at the commencement of the action, where the plaintiff's claim is based on contract.

The contention that the counterclaim is one arising under subdivision 1 of section 266 is, in my judgment, not sustained by the proof. The counterclaim is not a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, nor is it one connected with the subject of the plaintiff's action. The plaintiff's causes of action are based on the breach of the agreement between the plaintiff and the defendant whereby the plaintiff was to receive one-fourth of the money earned by the defendant as the sales agent for Geets and on the non-payment of the rent under the defendant's assumption of plaintiff's lease. The note which is the subject of the counterclaim was given by the plaintiff to Geets, to pay an indebtedness due to Geets from the plaintiff because of transactions between these two parties when the plaintiff represented Geets as sales agent. In other words, the counterclaim is based on the agree-

ment between the plaintiff and Geets, while the plaintiff's cause of action flows from an alleged breach of the contract between the plaintiff and the defendant. True, both agreements are contained in the tripartite contract dated February 26, 1926, but they are not so connected one with the other as to make the counterclaim one which arises out of the contract or transaction set forth in the complaint.

The counterclaim is, therefore, one based on an alleged independent cause of action on contract, and to be enforcible in this action it must exist at the commencement thereof. There is no definite, certain or clear proof that it so existed, and for that reason it cannot be considered. (*Church Co.* v. *Clarke*, 77 Hun, 467; *Starks* v. *Rhodes*, 64 Misc. 13; *Caspary* v. *Hatch*, 157 App. Div. 679.)

A motion was made to dismiss the counterclaim, on which decision was reserved. This motion is now granted, without prejudice to a new action.

The result of my conclusions is as follows: A verdict is directed in favor of the plaintiff against the defendant on the first cause of action in the sum of $1,875, with appropriate interest, and a verdict is directed in favor of the plaintiff against the defendant on the second cause of action in the sum of $375, with appropriate interest. The defendant's counterclaim is dismissed without prejudice to a new action. The motion made to dismiss the complaint at the close of the plaintiff's case, on which decision was reserved, is denied. An exception to these rulings is granted to the respective parties. Ten days' stay of execution, and thirty days to make a case.